UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNETTE DYER,<br><br>        Plaintiff<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security<br><br>        Defendant | CIVIL ACTION NO. 1:15-CV-00225<br><br>(MEHALCHICK, M.J.) |

### MEMORANDUM OPINION

This is an action brought under Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lynette Dyer's claims for disability insurance benefits and supplemental security income under the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 21; Doc. 22). For the reasons expressed herein, the Commissioner's decision shall be VACATED and this case shall be REMANDED for a new administrative hearing.

**I.   PROCEDURAL HISTORY**

Ms. Dyer is a forty-seven year old college graduate. She was forty-two years old on her alleged onset date. She previously worked as an operating room technician and medical secretary. On July 28, 2009, Ms. Dyer was injured when she sat in a chair at work that was broken. The chair collapsed beneath her, and Ms. Dyer landed on her tailbone. (Admin. Tr. 434, Doc. 9-9, at 74). X-rays of the affected areas revealed no evidence of fracture. (Admin.

Tr.433, Doc. 9-9, at 73). Ms. Dyer was diagnosed with a contusion on her coccyx or sacrum, and was instructed not to lift more than five pounds until she was well. (Admin. Tr. 439, Doc. 9-9, at 80). Ms. Dyer was ambulatory when she left the emergency room, and her level of pain on departure was a three out of ten, with ten being most severe. (Admin. Tr. 436, Doc. 9-9, at 76). Ms. Dyer alleges that, since that date, she has had lower back pain and left lower extremity pain.

Following her injury, Ms. Dyer's former employer tried to move her to a secretarial position. (Admin. Tr. 74, Doc. 9-9, at 75). Ms. Dyer testified that she was unable to work in this position due to frequent absences as a result of her ongoing pain, and because she could no longer comfortably drive the one-hour and fifteen-minute commute to work. (Admin. Tr. 172, Doc. 9-6, at 7). She stopped working on September 19, 2010. (Admin. Tr. 172, Doc. 9-6, at 7). On March 12, 2012, Ms. Dyer filed an application for supplemental security income under Title XVI of the Social Security Act. On April 9, 2012, Ms. Dyer filed an application for disability insurance benefits under Title II of the Social Security Act. In both applications Ms. Dyer alleged a disability onset date of September 19, 2010. She also alleged that her disability is a result of the following medical and psychiatric conditions: chronic pain caused by work-related injury to back/leg; back injury; depression; anxiety; chronic uncontrolled neurological pain; inability to drive, sit, stand more than 15 min; interrupts activities of daily living; numerous doctors' appointments to manage chronic pain; limitations to driving restricted when not on medication. (Admin. Tr. 171, Doc. 9-6, at 6). Ms. Dyer alleges that these conditions affect her ability to: lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate. (Admin. Tr. 188, Doc. 9-6, at 23).

Ms. Dyer's claims were denied at the initial level of administrative review on May 25, 2012. As part of the initial denial of her claims, Ms. Dyer's case was reviewed by nonexamining state agency psychologist Thomas Fink ("Dr. Fink"). Dr. Fink opined that Ms. Dyer's alleged mental impairments were non-severe. (Admin. Tr. 97, Doc. 9-3, at 6).

Ms. Dyer then requested an administrative hearing. Before Ms. Dyer's hearing took place, however, her case was informally remanded. As part of the informal remand process, Ms. Dyer's claims were reviewed by nonexamining state agency medical consultant Gary S. Friedman ("Dr. Friedman"), who specializes in orthopedic medicine, on October 2, 2012. After reviewing Ms. Dyer's MRIs, lumbar discogram, post-discogram CT, and nerve conduction study, Dr. Friedman opined that Ms. Dyer's symptoms were reasonably attributed to her impairment, but that Ms. Dyer was likely more functional than she reports. (Admin. Tr. 515, Doc. 9-10, at 71). Dr. Friedman assessed that Ms. Dyer could: occasionally lift or carry up to twenty pounds; frequently lift or carry up to ten pounds; stand or walk (with normal breaks) for a total of at least two hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours per eight-hour workday; push or pull (including the operation of hand/foot controls) without limitation other than shown for lifting and carrying; frequently kneel, crouch, and crawl; occasionally climb (ramps, stairs, ladders, ropes, and scaffolds), balance, stoop, and kneel. (Admin. Tr. 510-15, Doc. 9-10, at 66-71). Ms. Dyer's claims were denied on informal remand.

On June 6, 2013, Ms. Dyer appeared with her attorney before ALJ Timothy Wing. Impartial vocational expert Gerald W. Keating ("VE Keating") also appeared and testified during Ms. Dyer's administrative hearing. During her hearing, Ms. Dyer testified that she is

unable to work for health reasons due to her chronic pain, inability to sit for prolonged periods (secondary to pain), and due to the confusion and dizziness she experiences as a side effect to her prescribed medications.[1] (Admin. Tr. 62, Doc. 9-2, at 63). Ms. Dyer testified that she cannot lift or carry items weighing more than fifteen pounds, and cannot repetitively lift or carry items weighing more than five pounds, and walks with a cane. Ms. Dyer also reported that she needs to lie down and sleep after each time she takes her medication (approximately four times per day). (Admin. Tr. 76, Doc. 9-2, at 77). The medical records from one of Ms. Dyer's pain management specialists, Dr. Sharma, reflect that Ms. Dyer was using a cane in April 2012. (Admin. Tr. 483, Doc. 9-10, at 39). There is no indication in the objective records as to whether this cane was prescribed, or deemed medically necessary by a treating source.

      Ms. Dyer also testified that she experiences chronic falls. On April 23, 2012, Dr. Sharma, noted that Ms. Dyer's recurrent falls were not coincident with her pain and that Ms. Dyer had some bruising over her right orbit that she attributed to a recent fall. (Admin. Tr. 485, Doc. 9-10, at 41). Ms. Dyer told Dr. Sharma that she planned to see a neurologist in September. (Admin. Tr. 540, Doc. 9-10, at 97). Ms. Dyer also testified that she fell and broke her wrist twice as a result of her "chronic falls." Ms. Dyer reported that she fell and broke her wrist; she fell a second time and broke the cast that was placed on her wrist. Medical records reflect that Ms. Dyer fell and injured her right wrist and forearm on November 27, 2012. An MRI taken

---

[1] On the date of her hearing, Ms. Dyer reported that her current medications were: prescription strength Ibuprofen, Tramadol, Amitriptyline, and Flexeril. (Admin. Tr. 62, Doc. 9-2, at 63). Ms. Dyer admitted that she also took over-the-courter Acetaminophen or Ibuprofen in addition to her prescribed medication. *Id.*

one week later revealed that Ms. Dyer had a nondisplaced fracture of the distal radius. (Admin. Tr. 528, Doc. 9-10, at 84). Records from Ms. Dyer's primary care physician dated January 2013, note that Ms. Dyer fell a second time and broke the cast that was on her wrist. (Admin. Tr. 582, Doc. 9-12, at 33). Ms. Dyer's reported that she regained approximately 90% functionality in her wrist after the fracture healed. (Admin. Tr. 65, Doc. 9-2, at 66). Ms. Dyer reported that her doctors have not been able to explain why she is suffering from these chronic falls. (Admin. Tr. 66, Doc. 9-2, at 67). Ms. Dyer testified that she falls between three and five times per month. (Admin. Tr. 80, Doc. 9-2, at 81).

On June 24, 2013, the ALJ denied Ms. Dyer's claims in a written decision. Ms. Dyer requested administrative review of the ALJ's decision denying her claims by the Appeals Council of the Office of Disability Adjudication and Review. Together with her request, Ms. Dyer submitted new evidence that was not before the ALJ when he issued his decision. (Admin. Tr. 8-13, Doc. 9-2, at 9-14); (Admin. Tr. 674-81, Doc. 9-13, at 40-47); (Admin. Tr. 682-813, Doc. 9-14, at 2-133). The Appeals Council denied Ms. Dyer's request for review. This makes the ALJ's June 2013 decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Ms. Dyer appealed the Commissioner's final decision by filing the complaint in this action on January 30, 2015. (Doc. 1). In her complaint, Ms. Dyer alleges that the Commissioner's final decision is incorrect, and that she meets the statutory definition of disability under the Social Security Act, and that the Commissioner's final decision denying her claim is not in conformity with the applicable statutes and regulations. Ms. Dyer requests that the Court enter judgment in her favor by vacating the decision of the Commissioner and

remanding this matter to the Appeals Council for further review. Ms. Dyer attached a medical source statement dated January 28, 2015, to her complaint; this medical source statement was not presented to the ALJ or Appeals Council. (Doc. 1-4). On April 10, 2015, the Commissioner filed her answer to Ms. Dyer's complaint. (Doc. 8). In her answer, the Commissioner maintains that the final decision holding that Ms. Dyer is not entitled to disability insurance benefits and supplemental security income is correct and was made in accordance with the law and regulations. The Commissioner also asserts that the ALJ's findings of fact are supported by substantial evidence. Together with her answer, the Commissioner filed a certified copy of the transcript of the record, including the evidence upon which the ALJ's findings of fact are based. (Doc. 9). This matter is now fully briefed by the parties and ripe for decision. (Doc. 15, Doc. 17, Doc. 18).[2]

## II.  STANDARD OF REVIEW

To receive benefits under Title II or Title XVI of the Social Security Act, the claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[2] In her reply, Ms. Dyer contends that the Commissioner's brief exceeds the maximum page limit set by the Court's standing order 13-9, and requests that the Commissioner's brief be stricken for non-compliance with a court order. (Doc. 18, at 1-2).
It appears that the Commissioner adhered to Local Rule 7.8, governing the length and content of briefs filed in support or in opposition to motions in non-social security cases. Local Rule 7.8 provides that a brief may exceed 15 pages so long as it does not exceed 5,000 words. The Commissioner included a certification that her brief is 3,715 words. (Doc. 17-1). Given the Commissioner's compliance with LR 7.8, we decline to take the extreme measure of striking her brief because it is non-compliant with LR 83.40.7, which does not afford litigants the same flexibility as LR 7.8.

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). To satisfy this requirement, the claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant number in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B). In addition, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating the question of whether a claimant is under a disability as it is defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether the claimant is able to do his past relevant work, considering his current residual functional capacity ("RFC");[3] and, (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his current RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him from doing his past

---

[3] A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Before the ALJ goes from step three to step four, he or she assesses the claimant's RFC. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). The RFC is used at step four and step five to evaluate the claimant's case.

relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question

before this Court, therefore, is not whether Ms. Dyer is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See* Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also* Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### III. THE ALJ'S DECISION

In his June 2013 decision, the ALJ determined that Ms. Dyer last met the insured status requirement of Title II of the Social Security Act on December 31, 2015. (Admin. Tr. 25, Doc. 9-2, at 26). At step one of the five-step process, the ALJ determined that Ms. Dyer had not engaged in any substantial gainful activity between her alleged onset date and the date he issued his decision. (Admin. Tr. 25, Doc. 9-2, at 26). At step two, the ALJ determined that Ms. Dyer had the following medically determinable severe impairments: degenerative disc disease, herniated nucleus pulposus of the lumbar spine with radiculopathy, facet syndrome, myofascial pain syndrome, obesity, and major depressive disorder. (Admin. Tr. 25, Doc. 9-2, at 26). The ALJ noted that Ms. Dyer has also been diagnosed with hypertension, hypothyroid, gastroesophageal reflux disease ("GERD"), obstructive sleep apnea, chronic insomnia, and is status-post right wrist fracture. The ALJ found that these impairments were medically determinable but non-severe. (Admin Tr. 26, Doc. 9-2, at 27). At step three, the ALJ found that

Ms. Dyer did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 26, Doc. 9-2, at 27).

Prior to step four, the ALJ determined Ms. Dyer's RFC based on the evidence of record including: Ms. Dyer's testimony; the assessment by Dr. Fink that Ms. Dyer had no medically determinable severe mental impairments; the assessment by Dr. Friedman that Ms. Dyer was capable of engaging in a range of light work; and the available medical records from Ms. Dyer's treating sources. *See* 20 C.F.R. § 404.1567(b), 20 C.F.R. 416.967(b)(defining light work). The ALJ determined that Ms. Dyer retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a) except:

> She is limited to occupations that require no more than occasional postural maneuvers, such as stooping, kneeling, crouching and climbing on ramps and steers[sic]. She must avoid occupations that require climbing ladders, balancing or crawling. She must be afforded the option to sit and stand during the workday, for brief periods of one to 2 min. every half an hour or so. She must avoid concentrated prolonged exposure to environments with temperature extremes, extreme dampness and humidity. She is limited to occupations requiring no more than simple, routine, repetitive, work-related decisions, and in general relatively few workplace changes. She is limited to occupations, which require no more than occasional interaction [with] supervisors, coworkers and members of the general public.

(Admin. Tr. 28, Doc. 9-2, at 29).

The ALJ's conclusions at steps four and five of the sequential evaluation process were based upon VE Keating's testimony. As an initial matter, VE Keating testified that Ms. Dyer's past relevant work as an operating room technician is classified as a skilled occupation with a light exertion level (medium as performed by Ms. Dyer), and Ms. Dyer's past relevant work as a medical secretary is classified as a skilled occupation with a light exertion level because it

required some walking. (Admin. Tr. 85, Doc. 9-2, at 86). The ALJ also posed a hypothetical question to VE Keating that accounted for all of the limitations reflected the in above RFC assessment, and accounted for Ms. Dyer's age, education, and work experience. In response, VE Keating testified that such an individual could engage in work as an assembler of small products (DOT #706.684-022), surveillance system monitor (DOT #379.367-010), and packer (DOT #920.587-018).[4] (Admin. Tr. 86-87, Doc. 9-2, at 87-88). VE Keating's testimony revealed that these occupations constitute between 800 and 1,100 positions in the northeastern Pennsylvania region, and would be available in increasingly large numbers within the greater national economy. (Admin. Tr. 86-87, Doc. 9-2, at 87-88).

In addition to his controlling hypothetical, the ALJ also posed additional questions to VE Keating concerning limitations that the ALJ ultimately decided not to credit. VE Keating testified that, if an individual required use of a cane held in her dominant hand, in addition to the other limitations outlined in the ALJ's controlling hypothetical, the three jobs would remain intact within the same numbers. (Admin. Tr. 88, Doc. 9-2, at 89). VE Keating also testified that if an individual required frequent breaks, absences at will, time off task at will, and absences from work ranging upwards of three or more times per month, such an individual would not be employable. (Admin. Tr. 88, Doc. 9-2, at 89).

---

[4] VE Keating elaborated that the DOT code he identified for "packer" corresponds to an occupation requiring a medium exertion level. VE Keating explained that packing is performed at all exertional levels. He cited to that particular code because it also describes packaging jobs that would not require more than a sedentary exertion level. (Admin Tr. 89, Doc. 9-2, at 90).

At step four of the sequential evaluation process, the ALJ found that Ms. Dyer would be unable to engage in her past relevant work as an operating room technician or medical secretary. (Admin. Tr. 31, Doc. 9-2, at 32). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Ms. Dyer could perform. (Admin. Tr. 32, Doc. 9-2, at 33). Because an individual must be unable to engage in her past relevant work, and any other work that exists in the national economy, to be found disabled under the Social Security Act, the ALJ concluded that Ms. Dyer was not under a disability during the relevant period.

IV. **ANALYSIS**

    A. <u>COUNSEL HAS FAILED TO DEMONSTRATE THAT ANY MEDICAL RECORDS ARE MISSING FROM THE TRANSCRIPT</u>

Ms. Dyer initiated this action *pro se*.[5] On April 10, 2015, the Commissioner timely filed her Answer, and a copy of the 813 page administrative transcript of the entire record of the proceedings relating to this case – including the medical records that the ALJ relied on in reaching his decision. An employee of the Social Security Administration appended a signed certification that the documents submitted constituted a full and accurate transcript. (Doc. 9). The Commissioner filed a certificate of service indicating that on April 10, 2015, both the Answer and Transcript were served upon Ms. Dyer by placing a copy of these documents in a postpaid envelope that was sent to Ms. Dyer's address of record. (Doc. 8, at 5). An electronic

---

[5] The record reflects that on May 31, 2013, a few days before Ms. Dyer's administrative hearing, a fee agreement was executed appointing David Harrison as Ms. Dyer's secondary representative. (Admin. Tr. 139, Doc. 9-4, at 26). The transcript of Ms. Dyer's administrative hearing reflects that, in addition to representing Ms. Dyer in this action, Mr. Harrison also represented Ms. Dyer at her administrative hearing. (Admin Tr. 56, Doc. 9-2, at 57).

copy of these documents was also filed using the Court's electric case filing ("ECF") system. These documents appear as docket entries 8, 9, 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, 9-7, 9-8, 9-9, 9-10, 9-11, 9-12, 9-13, and 9-14 in the electronic case file.

On June 1, 2015, Ms. Dyer obtained counsel to represent her in this case. Counsel electronically filed a motion for extension of time to file his brief. In his motion, Counsel noted that the copy of the administrative record that Ms. Dyer provided to him did not contain medical records. (Doc. 11, ¶ 4). After being granted an extension of time, Counsel electronically filed a brief. (Doc. 15). In the brief, Counsel noted that the Commissioner had produced "only the hearing transcript and a few other exhibits," and reported that "[n]o medical records have been produced." (Doc. 15, at 1 n. 1). The Commissioner filed her brief on July 16, 2014, but did not discuss Ms. Dyer's allegation that no medical records had been produced. (Doc. 17).

On July 16, 2015, Ms. Dyer's counsel electronically filed a reply brief on his client's behalf. The reply brief opens with the following passage:

> Preliminarily, Counsel needs to raise two issues. He has never received the medical records. See note 1 to Plaintiff's Brief in Support of Her Appeal. This makes it difficult to brief this case since it is difficult to evaluate the accuracy of the ALJ's interpretation of the records. If the Court does not have the actual records, it also makes it difficult to fairly evaluate the evidence and arguments made. For these reasons, Counsel is requesting the court to order that a copy of the complete medical records be filed within 15 days, that undersigned counsel be supplied a copy, and that he be given leave to file a further supplemental brief if he deems it appropriate.

(Doc. 18, at 1).

Our review of the electronic copy of the 800-page administrative transcript reveals that it includes over 500 pages of medical records, some of which were not before the ALJ when he issued his decision. Counsel has had access to this copy of the transcript since the date he

entered his appearance in this case. Counsel has failed to identify any specific records either from a particular period of time or a particular provider that are missing from the Commissioner's voluminous submission, and the Social Security Administration has certified that the records produced are complete. Accordingly, the Court shall deny Counsel's vague request that this Court require the production of any additional medical records.

    B. THE ALJ'S CREDIBILITY ASSESSMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Ms. Dyer argues that the ALJ erred in his credibility analysis by mischaracterizing her testimony and relying only on her statements that were consistent with his ultimate conclusion. In particular, she asserts that it was error for the ALJ to find that her pain was constant at a 5/10, when her testimony and medical records reflect that it was always *at least* a 5/10 and was sometimes higher. Ms. Dyer also asserts that the ALJ failed to consider the serious implications her chronic falls, use of a cane, medication side-effects of dizziness and confusion would have on her occupational base. In response, the Commissioner maintains that the ALJ evaluated Ms. Dyer's statements "against the record as a whole and reasonably determined that her subjective complaints were not fully credible in light of the objective medical evidence and other evidence of record." (Doc. 17, at 15).

In his decision, the ALJ explained that while Ms. Dyer's medically determinable impairments could reasonably be expected to cause her symptoms, Ms. Dyer's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Admin. Tr. 31, Doc. 9-2, at 32). The ALJ's ultimate finding on the issue of Ms. Dyer's credibility was preceded by a summary of the medical evidence of record, and followed by the ALJ's explanation that:

> In terms of the claimant's alleged disability, the claimant has described a life style fully consistent with sedentary activity with the restrictions as noted in the residual functional capacity. Even with these restrictions, the vocational expert was able to name appropriate jobs. The claimant is limited to simple routine tasks and needs a sit/stand option, but this does not preclude all substantial gainful activity.

(Admin. Tr. 30, Doc. 9-2, at 31).[6] Ms. Dyer contends that the ALJ failed to properly explain his credibility assessment and the Court agrees. Although the ALJ's assessment that Ms. Dyer's testimony is only "partially credible" is preceded by a detailed discussion of the medical evidence of record and Ms. Dyer's "life style," the Court is troubled by the vagueness of the ALJ's explanation of his credibility assessment. The ALJ fails to draw any specific connection between Ms. Dyer's activities and the ability to engage in substantial gainful activity. "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637, F.2d 968, 971 (3d Cir. 1981). Although an ALJ's findings about the credibility of a claimant's statements are to be accorded great weight and deference, "since an ALJ is charged with the duty of observing a witness's demeanor and

---

[6] The ALJ characterized Ms. Dyer's testimony about her "life style" as follows:

> She has fallen several times, and now uses a cane. She uses the motorized carts in stores and usually takes someone with her. She does drive, but limits herself to local trips and usually takes someone with her when she is on her medication. She has traveled to New Jersey for her kids, and last summer flew to Alabama for vacation for three weeks to visit family. She does the grocery shopping, and her boyfriend does the cooking. Since he flies all over the county and is away for up to a week, she does simple meals. She does not do the yard work, and used to enjoy backpacking and camping. She has not gone camping in two years. She reads books, does puzzles and number puzzles to pass the time. She uses a computer. She goes to school activities, and takes her children to the bus stop.

(Admin. Tr. 30, Doc. 9-2, at 31).

credibility," *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246 *9(E.D. Pa. Mar. 7, 2000)(*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531(6th Cir. 1997)*)*, the ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Schwartz v. Halter*, 134 F.Supp.2d 640, 654 (E.D.Pa. 2001)(*quoting* SSR 96-7p, 1996 WL 374186). Because the ALJ failed to do so in this case the Court is compelled to remand this case so that the ALJ may provide further explanation for the basis of his findings.

V. CONCLUSION

Based on the foregoing, the Court concludes that the final decision of the Commissioner denying Ms. Dyer's claims is not supported by substantial evidence. As such, the Commissioner's final decision shall be **VACATED** and case shall be **REMANDED** to the Commissioner to conduct a new administrative hearing. On remand, the ALJ shall articulate specific reasons for his credibility findings.

Dated: February 25, 2016                                s/ *Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States Magistrate Judge**